UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

           Plaintiff,

vs.

Assorted Jewelry VL: $58,100,

           Defendants *in rem*.

Civil No. 20-cv-10525
Honorable Arthur J. Tarnow

**UNDER SEAL**

## COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through Matthew Schneider, United States Attorney for the Eastern District of Michigan, and Gjon Juncaj, Assistant United States Attorney, and for its Complaint for Forfeiture states:

### JURISDICTION AND VENUE

1.    This is an *in rem* civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6), and 18 U.S.C. § 981(a)(1)(A).

2.    This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 because this action is being commenced by the United States of America as Plaintiff.

3.     This Court has jurisdiction over this forfeiture action pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Eastern District of Michigan.

5.     Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(a), (b), and (c) because the action accrued and the Defendants *in rem* were found, seized and remain in the Eastern District of Michigan.

6.     The Defendants *in rem* are Assorted Jewelry Valued at $58,100 (Defendant Jewelry) seized by law enforcement officers pursuant to a Federal search and seizure warrant on or about March 21, 2019.

## STATUTORY BASIS FOR CIVIL FORFEITURE

7.     Title 21, United States Code, Section 881, governs the civil forfeiture of property which constitutes or is derived from the proceeds of narcotics crimes, or which was used to facilitate narcotics crimes:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them. . . .[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. 21 U.S.C. § 881(a)(6).

8. Title 18, United States Code, Section 981(a)(1)(A), governs the civil forfeiture of property involving in money laundering offenses, and provides the following property is subject to forfeiture to the United States:

> Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

## **FACTUAL BASIS FOR CIVIL FORFEITURE**

9. The Defendants *in rem* are forfeitable to the United States because they constitute the proceeds of, or are traceable to proceeds of, Illegal Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1).

10. The Defendants *in rem* are forfeitable to the United States as property involved in money laundering, in violation 18 U.S.C.

3

§ 1956(a)(1)(B)(i) (conduct or attempting to conduct a financial transaction designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity) and/or 18 U.S.C. § 1957 (knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity).

## **GENERAL ALLEGATIONS**

11.  In March 2018, a Drug Enforcement Administration (DEA) Task Force and the Office of Inspector General, United States Postal Service (USPIS) began an investigation into the drug-trafficking activities of a Drug Trafficking Organization (DTO) headed by Deon Williams.

12.  Investigation revealed that the DTO was using common carriers such as United States Postal Service (USPS), UPS, and FedEx, to transport Priority Mail parcels containing controlled substances, and proceeds from the sale of controlled substances, between known source locations in the Bay Area of Northern California (Bay Area), and

4

locations in southeast Michigan.  The DTO also mailed currency derived from drug trafficking back to California.

13.    Investigation revealed a pattern of Priority Mail parcels containing controlled substances sent from the Bay Area to the addresses of apartment complexes or residences in metropolitan Detroit, Michigan. As part of the DTO operation, postal carriers cooperating with the DTO would scan these parcels to indicate completed deliveries, then instead meet members of the DTO in the area to hand them off.

14.    One of the residences to which these Priority Mail parcels were addressed is a house on Biltmore Street in Detroit only two blocks west of the residence at 18XXX Asbury Park (Asbury Park residence) Williams shares with his mother and his sister, Yvette Pullum. Williams drives a 2018 Infiniti QX80 revealed through investigation to be frequently at the Biltmore residence, and investigators have observed a DTO member removing a parcel suspected to contain controlled substances from the Biltmore house and delivering it to the Asbury Park residence.

5

15. Williams's mother, Youonne Denise Williams, is the registered owner of a 2018 Infiniti QX80. Deon Williams has been observed to be the primary driver of the Infiniti QX80.

16. Williams's sister, Yvette Pullum, has been identified as "refining" currency, i.e., exchanging small bills for large bills. Pullum has conducted cash exchanges in amounts totaling up to $600,000.00 at various area banks, with proceeds of the DTO's drug-trafficking conspiracy.

17. Based on their investigation, DEA Task Force officers obtained a federal search and seizure warrant for the Asbury Park residence, which they executed on March 21, 2019. Yvette Pullum, Youonne Denise Williams, two other adults and one child were present at the Asbury Park residence. The Defendant Jewelry, which includes four men's watches, ranging in appraised valued from $2,500 to $40,000, two gold rope necklaces and a diamond ring, were seized from a dresser in the southwest bedroom of the house. Also seized from the bedroom closet of the southwest bedroom was $48,000 in U.S. currency, consisting primarily of $100 bills and $20 bills. The U.S. currency was

6

banded together with black rubber bands, very similar to U.S. currency that was previously seized from the DTO in November 2018, which was believed to be drug proceeds being sent to northern California. Both Pullum and Youonne Denise Williams denied ownership or knowledge of the jewelry. Youonne Denise Williams claimed the southwest bedroom was her bedroom. She added that Deon Williams stays at the house "off and on" and that Deon Williams must have put the cash in the closet.

18. DEA Task Force officers seized the Defendant Jewelry and $48,000 in U.S. currency as property traceable to proceeds of Deon Williams's drug-trafficking activity, making them forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6). The Defendant jewelery is also forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in money laundering.

19. Deon Williams filed a sworn claim to the Defendant Jewelry with the DEA as the "sole owner" of the jewelry. Receipts for the purchase of the jewelry, provided by Williams with his claim, reveal the Defendant Jewelry was purchased in cash. The receipts provide further

that the customer at the time of purchase was "Brandi M. Bryant." No administrative claim was filed to the $48,000 in U.S. currency by Deon Williams or any other person.

## CLAIM FOR RELIEF

20. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 above, including any subparagraphs thereunder.

21. The Defendant Jewelry should be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6), because it constitutes proceeds of illegal activity or property traceable to proceeds of Illegal Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1).

22. The Defendant Jewelry should be forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), because it is property involved in money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and/or 18 U.S.C. § 1957.

## CONCLUSION

Plaintiff, the United States of America, respectfully requests that

a warrant for the arrest of the Defendant Jewelry be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the aforementioned Defendant Jewelry condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

    Respectfully submitted,

    MATTHEW SCHNEIDER
    United States Attorney

    s/GJON JUNCAJ
    GJON JUNCAJ
    U.S. Attorney's Office
    211 W. Fort Street, Ste. 2001
    Detroit, MI 48226
    (313) 226-0209
    Email: gjon.juncaj@usdoj.gov
    (P63256)

Dated: February 28, 2020

## VERIFICATION

I, MICHAEL LENCIONI am a Task Force Officer with the Drug Enforcement Administration (DEA). I have read the foregoing Complaint for Forfeiture and assert under penalty of perjury that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

                                                        Task Force Officer Michael Lencioni
                                                        Drug Enforcement Administration

Dated: 2-26-2020